UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN EGERER, et al.,

                Plaintiffs,                        Case No.: 1:06cv0789

                v.

WOODLAND REALTY, INC., et al.,              Hon. Richard A. Enslen

                Defendants.             Hon. Ellen S. Carmody

_____/

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR LEAVE TO CITE NEW AUTHORITY
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR
FOR SUMMARY JUDGMENT**

### INTRODUCTION

The Defendants have sought to dismiss or limit the Plaintiffs' First Amended Complaint using various arguments, including the "filed rate doctrine" and attempting to avoid the equitable tolling of the statute of limitations.  But since the time briefing of these issues was complete, Chicago Title litigated and lost these very same arguments in a recent decision from the U.S. District Court for the Western District of Washington, in the case of *Blaylock v. First American Title Ins. Co., et al.,* Case No. C06-1667JLR, 2007 U.S.Dist. LEXIS 57710 (August 8, 2007) (a copy of the *Blaylock* opinion is attached).  This Court should give the *Blaylock* decision due consideration on these issues, as *Blaylock* offers a clear, thorough and persuasive rejection of the Defendants' arguments on the filed rate doctrine and equitable tolling.

### ARGUMENT

In the *Blaylock* decision, Chicago Title and several other title companies have been named as defendants in a class action arising from allegations of, *inter alia*, illegal referral fee

1138968.1

payments and other wrongful conduct in violation of RESPA, just as the Plaintiffs and putative

class have asserted in the present action.  The predicate for the *Blaylock* case was an

investigative report by the Washington State Office of the Insurance Commissioner (the "OIC")

that issued a "deeply critical" report on title insurance industry in Washington, finding that the

title companies "regularly violated the regulations." *Id.* at *10-11.  The *Blaylock* opinion offered

the following summary and excerpted the OIC report on the conduct of Chicago Title and other

title industry participants:

> Following the lead of the Colorado Department of Insurance and the National
> Association of Insurance Commissioners, the OIC engaged in a study of the major
> title companies operating in the greater Seattle metropolitan area, in an attempt to
> determine whether Washington title insurance companies were flouting statutory
> limits on inducements to middlemen, and if so, the extent of their violations.  The
> OIC demanded and studied employee expense reports and general ledgers from an
> 18-month period, and an additional holiday season outside that 18-month period.
> The OIC Report concluded, "the use of inducements and incentives by title
> companies to obtain title insurance business in Washington appeared to be
> widespread and pervasive."  Id. at 5.  It determined that title insurance companies
> use a series of schemes to influence middlemen to steer business their way, most
> of which were some version of "wining and dining."  Title companies provided
> gifts to middlemen; invited them on golf outings, sporting events, and ski trips;
> hosted parties for them; and underwrote their costs for real estate advertising.  The
> OIC Report indicated that these practices would have an inevitable effect on
> consumers: "While there may not appear to be a clear connection between these
> illegal practices and a negative impact on consumers, ... [i]t is undeniable that
> these practices cost money, and it's clear that the consumer, who ultimately pays
> for the coverage, is the only source of money for these illegal expenses."

Many of the allegations in the present case are essentially identical to the findings of the OIC

report, *e.g.*, illegally underwriting the costs of real estate advertising, although it does appear that

the Chicago Title employees in Washington were not as bold as those in the present case, where

the allegedly illegal practice of paying agents "$15 per closing" was literally set forth in black-

and-white print in the Defendants' procedure manual.  The *Blaylock* court specifically rejected

Chicago Title's arguments invoking the "filed rate doctrine" as a defense, and it further decided

2

as a matter of law that equitable tolling is available to plaintiffs alleging RESPA violations.

Thus, Chicago Title has already argued and lost these points in a different federal court, and this

Court should be wary of permitting Chicago Title to relitigate the issues in this forum, attempting

to avoid the legal consequences of essentially the same conduct in a different state.

<u>CONCLUSION</u>

The *Blaylock* decision provides a strongly persuasive treatment and rejection of the filed

rate doctrine and equitable tolling arguments the Defendants have offered in the present case.

This Court should accordingly give the *Blaylock* decision due consideration and reject the

Defendants' arguments on these issues.

Respectfully submitted,

Dated: August 29, 2006          By:     _/s/ Michael W. Basil _____

Michael W. Basil
Clausen Miller P.C.
10 S. LaSalle
Chicago, IL 60603
(312) 606-7709
Attorneys for Plaintiffs

- and -

Todd M. Anthes
Scholten Fant
100 North Third Street
Grand Haven, MI 49417
(616) 842-3030
(616) 846-6621 facsimile

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the above and foregoing document was delivered on the 29th day of August, 2007, to the following via electronic filing: WARNER NORCROSS & JUDD, LLP, Brian Masternak, bmasternak@wnj.com, 900 Fifth Third Center, 111 Lyon Street N.W., Grand Rapids, MI 49503

_____/s/ Michael W. Basil _____

3