UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN EGERER, STEPHANIE
EGERER and KATHY BOYINK,

        Plaintiffs,

v.

WOODLAND REALTY, INC.,
WOODLAND TITLE AGENCY, LLC,
CHICAGO TITLE INSURANCE CO.
and CHICAGO TITLE OF MICHIGAN,
INC.,

        Defendants.
_____/

Case No. 1:06-CV-789

Hon. Richard Alan Enslen

**OPINION**

    This matter is before the Court on Defendants Woodland Realty, Inc., Woodland Title Agency, LLC, Chicago Title of Michigan, Inc., and Chicago Title Insurance Company's Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) and alternative Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56. Also before the Court is Plaintiffs Stephen Egerer, Stephanie Egerer, and Kathy Boyink's Motion for Partial Judgment on the Pleadings brought pursuant to Federal Rule of Civil Procedure 12(c). Plaintiffs bring this Motion as individuals, and as the representatives of a class of similarly situated persons.[1] All motions are opposed. Upon review of the briefing, the Court determines that oral argument is unnecessary. *See* W.D. Mich. L. Civ. R. 7.2(d).

    Both Motions will be reviewed simultaneously. Because the Motions present matters outside the pleadings which should not be excluded, the Court analyzes the Motions under Rule 56. *See* Fed.

---

[1] Pending before the Court is Plaintiffs' Motion to Certify a Class Action and for Appointment of Class Counsel. This Motion is addressed, *infra*.

R. Civ. P. 12(b); *Soper v. Hoben*, 195 F.3d 845, 850 (6th Cir. 1999). After review, it is clear that summary judgment is appropriate for Defendants as to all federal claims.

## I. BACKGROUND

The following facts are presented in a light most favorable to Plaintiffs. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Plaintiffs Stephen and Stephanie Egerer ("the Egerers") engaged the services of Defendant Woodland Realty, Inc. to sell their home in Michigan. (Am. Compl. ¶ 8.) Woodland Realty's agent, Pat Siler—a relative of the Egerers— found a buyer for the Egerers' home and completed the sale transaction on June 14, 2004. (Mot. to Dismiss 2; *see also* Am. Compl. ¶ 9.) Siler arranged for the Egerers to use Defendant Woodland Title Agency, LLC to perform the settlement services necessary to complete the sale of their home. (Am. Compl. ¶ 10.) Siler presented a document to the Egerers explaining the affiliated business relationship between Woodland Realty and Woodland Title, entitled "Affiliated Business Arrangement Disclosure Statement." (Bouman Aff. ¶ 4; Dkt. No. 20, Ex. B.) The Affiliated Business Arrangement Disclosure Statement stated in pertinent part:

> We are pleased to recommend that title services be provided by Woodland Title Agency, LLC. . . . PLEASE NOTE THAT Woodland Realty has a business relationship with Woodland Title Agency, LLC. Because of this relationship, our referral may provide Woodland Realty with a financial or other benefit. . . . You are not required to use Woodland Title Agency, LLC as a condition for the purchase or sale of your home. You are welcome to shop around to determine whether you are receiving the best services and/or the best rate for this service.

(Dkt. No. 20, Ex. B.) The Egerers signed this document indicating that they understood: (1) the affiliated business relationship; (2) that they were not bound to use Woodland Title for the settlement

services; and (3) that the referral may provide Woodland Realty with a financial or other benefit.[2] (Bouman Aff. ¶ 4; Dkt. No. 20, Ex. B.) The Egerers filed their original Complaint in state court on September 29, 2006, challenging fees charged in connection with their real estate closing. (Compl. ¶ 7.)

Plaintiff Kathy Boyink entered into a contract to purchase a home in Michigan that was listed for sale by Woodland Realty and completed the purchase on October 6, 2005. (Am. Compl. ¶¶ 11–12.) Boyink's realtor was Heidi Parsons, a realtor with Prins Real Estate and friend of Boyink for over 25 years. (Boyink Dep. 7, 10 & 15.) Parsons instructed Boyink that Woodland Title would perform the necessary settlement services to complete the purchase of her home. (*Id.* at 10–11; Am. Compl. ¶ 13.) Boyink followed the recommendation of Parsons and engaged Woodland Title for the necessary settlement services.[3] (Boyink Dep. 16.) Boyink was added as a Plaintiff in the Amended Complaint filed on February 27, 2007. (Am. Compl.)

Plaintiffs' Partial Summary Judgment Motion is based on Woodland Title's "Marketing Dollars" program,[4] which states:

---

[2]The Egerers' acknowledgment stated, "I/We have read this disclosure form and understand that Woodland Realty is referring me/us to purchase the above services and that it may receive a financial or other benefit as a result of the referral." (*Id.*)

[3]"Nobody ever told me I could not go any place else. Again, I went based upon what [sic] my realtor recommended that I go to." (Boyink Dep. 16.)

[4]Plaintiffs also contend that Woodland Title contracted out performance of the settlement services to Defendants Chicago Title Insurance Company and Chicago Title of Michigan, Inc. (Am. Compl. ¶¶ 14–15.) Plaintiffs argue that Woodland Title was a "sham" or "shell" entity. Defendants suggest that Woodland Title is a broker of title insurance, in that it writes policies for individuals and then other companies, such as Chicago Title Insurance Company, actually underwrite and establish rates for the insurance. (Perlini Aff. ¶¶ 2–3.) Since the Court finds summary judgment appropriate for Defendants on other grounds, this argument is not addressed.

> Woodland Title provides marketing credit for those Sales Associates who utilize the services of Woodland Title for their closings. This credit is in the form of Woodland Title "Marketing Dollars" and is currently $15.00 per closing. Coupons can be used to offset any marketing or promotional expenses on the Sales Associate's monthly statement . . . .

(Woodland Realty Commission Program Manual 43.) Defendants explain that the Marketing Dollars program operates as follows:

> When a Woodland Realty agent produced a new listing, Woodland Title issued the agent a "no strings attached" certificate worth $15 for assistance with marketing Woodland Title's services. (Dkt. No. 20, Bouman Aff. ¶ 2.) The agent could use this money to defray the costs of printed promotional materials, entertainment, or other services rendered. (*Id.*) The certificate could be "cashed" by the agents to offset charges that they would otherwise owe to Woodland Realty for expenses incurred by Woodland Realty on behalf of the agent (such as printing or copy costs, phone charges, et cetera). (*Id.*) When Marketing Dollars credits were turned in to Woodland Realty, Woodland Realty would in turn invoice Woodland Title on a monthly basis for those costs. (*Id.*)

(Mot. to Dismiss 3.)

Based on the Marketing Dollars program, Plaintiffs contend that Woodland Title paid referral fees and kickbacks to Woodland Realty agents and concealed this fact in violation of the Real Estate Settlement and Procedures Act of 1974, 12 U.S.C. § 2601, *et seq.* ("RESPA"). (Am. Compl. ¶¶ 17 & 19.) Because of the $15 fee, Plaintiffs argue that they paid more for settlement services than they would otherwise have had to pay. (*Id.* at ¶ 33.) Defendants respond that "the $15 Marketing Dollars credit was paid monthly by Woodland Title regardless of whether (1) there was a closing relating to that particular listing or not, or (2) whether any closing that *did* occur took place at Woodland Title or some other title insurance company." (Mot. to Dismiss 3; *see also* Bouman Aff. ¶ 3.) Thus, Defendants dispute that the $15 Marketing Dollars increased "the cost of title insurance to the Egerers one penny." (Mot. to Dismiss 4.)

**II.   LEGAL STANDARD**

Under the language of Rule 56(c), summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 limits the materials the Court may consider in deciding a motion under the rule to: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (quoting Rule 56(c)). Moreover, affidavits must meet the requirements of Rule 56(e) because if they do not, they must be disregarded. *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993).

The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

While this analysis assumes the adequacy of discovery, a party cannot oppose summary judgment based on vague generalizations that discovery has been inadequate. Rather, under the language of Rule 56 and the case law of this Circuit, a party urging that discovery has been insufficient must file a specific affidavit establishing that "the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Rule 56(f); *Klepper v. First Am. Bank*,

916 F.2d 337, 343 (6th Cir. 1990); *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995).

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255).

## III. ANALYSIS

### A. RESPA

Plaintiffs brought their RESPA claim under 12 U.S.C. § 2607(a), which governs "business referrals." Section 2607(a) prohibits any person from giving or accepting "any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."[5]

The Housing and Urban Development ("HUD") regulations provide guidance on § 2607(a). "Any referral of a settlement service is not a compensable service, except as set forth in § 3500.14(g)(1)." 24 C.F.R. § 3500.14(b). Section 3500.14(g)(1) exempts, *inter alia*, payments by a title company to its agent for services actually performed in the issuance of a title insurance policy,

---

[5] Defendants argue that Plaintiffs have failed to allege an injury-in-fact as required by Article III of the Constitution. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Although the Court does not address this question, the Court is inclined to agree with Defendants and the reasoning set forth in *Moore v. Radian Group, Inc.*, 233 F. Supp. 2d 819 (E.D. Tex. 2002). This issue deserves resolution by the Sixth Circuit in an appropriate suit.

and payments to any person for goods or facilities actually furnished or for services actually performed. *Id.* at §§ 3500.14(g)(1)(ii), (iv). The HUD regulations further provide that "[a] business entity (whether or not in an affiliate relationship) may not pay any other business entity or the employees of any other business entity for the referral of settlement service business." *Id.* at § 3500.14(b). Thus, an important question is what type of action constitutes a "referral."

> A referral includes any oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person of a provider of a settlement service or business incident to or part of a settlement service when such person will pay for such settlement service or business incident thereto or pay a charge attributable in whole or in part to such settlement service or business.

*Id.* at § 3500.14(f)(1). If a practice by a title insurance company is not a referral, no cause of action can exist under § 2607(a). *See* 12 U.S.C. § 2607(a).

### 1. Statute of Limitations

RESPA actions brought under § 2607 are subject to a strict one-year statute of limitations. 12 U.S.C. § 2614. The statute starts running "from the date of the occurrence of the violation." *Id.* The Egerers' alleged RESPA violation occurred on June 14, 2004, which is when the settlement services were completed on their home. (Am. Compl. ¶ 9.) The Egerers filed their Complaint on September 29, 2006. (Compl.) The Egerers concede that this was more than a year and three months outside the one-year limitations period. Boyink's alleged RESPA violation occurred on October 6, 2005. (Am. Compl. ¶ 12.) Although Boyink was not added as a Plaintiff in the Amended Complaint until February 27, 2007, the limitations period was tolled starting on June 14, 2004, since class action certification was pending. *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353–54

(1983). Thus, the only limitations issue before the Court is whether the Egerers' claim is entitled to equitable tolling.[6]

Before delving into equitable tolling in the realm of RESPA, it is important to establish some general tolling principles. The application of equitable tolling "is usually very much restricted" and is appropriate only "in limited circumstances." *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 28 (6th Cir. 1987); *Brown v. Mead Corp.*, 646 F.2d 1163, 1165 (6th Cir. 1981). "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). "In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Id.* (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

Defendants ask the Court to follow *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040–41 (D.C. Cir. 1986), in which the District of Columbia Circuit ruled that equitable tolling is not available for a RESPA plaintiff. Although the Sixth Circuit has yet to decide this issue, the Court is convinced that equitable tolling is available to RESPA plaintiffs.[7] In *Young v. United States*, a unanimous Supreme Court found that "[i]t is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the

---

[6]Pending before the Court is Plaintiffs' Motion to Cite New Authority, specifically, *Blaylock v. First Am. Title Ins. Co.*, No. C06-1667JLR, 2007 U.S. Dist. LEXIS 57710 (W.D. Wash. Aug. 8, 2007). The Court grants Plaintiffs' Motion because it is helpful for the resolution of the case.

[7]Although the Sixth Circuit has not decided this exact issue, it has ruled that the similarly-worded Truth in Lending Act is subject to equitable tolling. *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984).

relevant statute. Congress must be presumed to draft limitations periods in light of this background principle." 535 U.S. 43, 49 (2002). Moreover, various courts have held that RESPA's statute of limitations is subject to equitable tolling, many of which expressly disagreed with the holding in *Hardin*. *See Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1166–67 (7th Cir. 1997); *Boudin v. Residential Essentials, LLC*, No. 07-0018-WS-C, 2007 WL 2023466, at *4 (S.D. Ala. July 10, 2007); *Carr v. Home Tech Co., Inc.*, 476 F. Supp. 2d 859, 869 (W.D. Tenn. 2007); *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 328 (M.D.N.C. 2002); *Pedraza v. United Guar. Corp.*, 114 F. Supp. 2d 1347, 1353 (S.D. Ga. 2000); *Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787, 793–96 (D. Md. 1998); *Moll v. United States Life Title Ins. Co.*, 700 F. Supp. 1284, 1286–89 (S.D.N.Y. 1988).

Although the Court finds that equitable tolling is available to a RESPA plaintiff, the Court must determine whether the Egerers deserve equitable tolling. In *Truitt v. County of Wayne*, the Sixth Circuit identified five factors courts should consider when determining whether equitable tolling is appropriate for a plaintiff's claim: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant;[8] and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. 148 F.3d 644, 648 (6th Cir. 1998).

One persuasive way for a plaintiff's claim to merit equitable tolling is to prove fraudulent concealment. The Supreme Court has permitted equitable tolling in situations where the plaintiff

---

[8]The Supreme Court has held that "[a]lthough absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply . . . , it is not an independent basis for invoking the doctrine." *Baldwin County Welcome Ctr.*, 466 U.S. at 152.

was "induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Under the doctrine of fraudulent concealment, if the defendant conceals from the plaintiff the existence of a cause of action, the statute of limitations may be equitably tolled. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465 (6th Cir. 1988). For the statute to be tolled, the plaintiff must allege that: "(1) the defendant concealed the conduct that constitutes the cause of action; (2) defendant's concealment prevented plaintiff from discovering the cause of action within the limitations period; and (3) until discovery plaintiff exercised due diligence in trying to find out about the cause of action." *Id.* (citing *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)). The burden of proving fraudulent concealment is with the plaintiff. *Pinney Dock & Transp.*, 838 F.2d at 1465.

Regarding the first element—the defendant's concealment—the concealment must be an affirmative act. *Jarrett v. Kassel*, 972 F.2d 1415, 1423 (6th Cir. 1992); *Pinney Dock & Transp.*, 838 F.2d at 1465; *see also Bailey v. Glover*, 88 U.S. (21 Wall) 342, 347–48 (1874). The plaintiff is "held to stringent rules of pleading and evidence" and must distinctly aver the time the concealment was discovered, and what the discovery is, "so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made." *Pinney Dock & Transp.*, 838 F.2d at 1465 (quoting *Wood v. Carpenter*, 101 U.S. (11 Otto) 135, 139–40 (1879)).

In this case, the Egerers filed their Complaint more than a year and three months after the statute of limitations expired. Although the Court finds no prejudice to Defendants, the Court is unable to conclude that the Egerers were diligent in pursuing their rights or reasonable in remaining ignorant of the filing requirement. *See Truitt*, 148 F.3d at 648. The Egerers have failed to adequately explain why their Complaint was filed long after the limitations period expired. The

Egerers were put on notice of the claim on the day they signed the Affiliated Business Arrangement Disclosure Statement, which stated in pertinent part: "PLEASE NOTE THAT Woodland Realty has a business relationship with Woodland Title Agency, LLC. Because of this relationship, our referral may provide Woodland Realty with a financial or other benefit." (Dkt. No. 20, Ex. B.)  Thus, the Egerers have failed to convince the Court that they were diligent in pursuing their claim or that any genuine issue as to any material fact exists making summary judgment improper.  *See Irwin*, 498 U.S. at 96.  Accordingly, the Court finds that the Egerers have not met the requirements for equitable tolling set forth in *Truitt*.

Although the Egerers contend that Defendants engaged in fraudulent concealment, the Court is unpersuaded that equitable tolling is appropriate.  As aforementioned, the Egerers did not exercise due diligence in trying to find out about the cause of action.  *See Pinney Dock & Transp. Co.*, 838 F.2d at 1465.  Further, the Egerers failed to allege facts in the Amended Complaint which demonstrate that Defendants *affirmatively* concealed the conduct that constitutes the cause of action. *Id.*; *see also Jarrett*, 972 F.2d at 1423.  For example, the Egerers do not claim that Defendants lied about or misrepresented the nature of the Marketing Dollars program, or that Defendants took any affirmative steps to keep them from finding out.  The Egerers never even inquired about the Marketing Dollars program or any payments that may change hands between Defendants relating to settlement services.  The Egerers were on notice of the Marketing Dollars program based upon, at the minimum, the Affiliated Business Arrangement Disclosure Statement. (*See* Dkt. No. 20, Ex. B.)  Although the Court is not ruling on whether the $15 Marketing Dollars payment is invalid under RESPA, the Court cannot discern any basis for requiring additional disclosure of the Marketing Dollars to customers.

This Court is similarly unpersuaded with the Egerers' suggestion that the information provided in the Affiliated Business Arrangement Disclosure Statement amounted to fraudulent concealment. In this statement, Woodland Title informed the Egerers that title insurance would cost approximately $330; however, Chicago Title Insurance Company's Rate Manual later indicated that $350 is the applicable rate. (Mot. for Part. J. 14; *see also* Kossen Dep. 55–56.) The Egerers argue the $350 rate was concealed from them, negating any chance to effectively "shop around" as the disclosure statement encouraged them to do.[9] This argument lacks merit because the disclosure statement clearly indicated that $330 was an "estimate." (Dkt. No. 20, Ex. B; *see also* Bouman Aff. ¶ 4.) "Estimate" is defined as "an approximate judgment or calculation." *Webster's New Universal Unabridged Dictionary* 663 (Barnes & Noble 2003). As such, this Court can discern no tenable basis for finding that the ballpark estimate of $330 amounted to fraudulent concealment.

Therefore, the Egerers' RESPA claim must be dismissed because it was not filed within the statute of limitations period and does not deserve to be equitably tolled. There is no genuine issue as to any material fact in the Egerers' claim and judgment is appropriate as a matter of law.

2. Referral Requirement

The Court now turns to Boyink's RESPA claim, which also suffers from fatal problems. To state a claim under RESPA, the alleged fee or kickback must relate to an actual referral. 12 U.S.C. § 2607(a); *Culpepper v. Irwin Morg. Corp.*, 491 F.3d 1260, 1265 (11th Cir. 2007) (finding that "a

---

[9]The disclosure statement encouraged customers to "shop around to determine whether you are receiving the best services and/or the best rate for this service." (Dkt. No. 20, Ex. B.) The Egerers never attempted to "shop around" or compare title insurance rates with other companies, which undercuts their argument that an estimate of $330 amounted to fraudulent concealment.

referral [must] actually occur[]"); *Gardner v. First Am. Title Ins. Co.*, No. Civ. 00-2176(RHK/AJB), 2003 WL 221844, at *7 (D. Minn. Jan. 27, 2003) (holding that there must "actually be a referral"); Paul A. Barron, *Federal Regulation of Real Estate* ¶ 2.04[1][a][iii] (1st ed. 1983). Although the home Boyink purchased was listed for sale by Woodland Realty, (Am. Compl. ¶ 11), her realtor, Heidi Parsons, was an agent of Prins Real Estate and was in no way connected to Defendants. (*See* Boyink Dep. 7.) Parsons instructed Boyink that Woodland Title would perform the necessary settlement services and Boyink followed this recommendation. (*Id.* at 10–11, 16; Am. Compl. ¶ 13.) Even though Parsons "referred" Boyink to Woodland Title, this is not the type of referral envisioned by § 2607(a).

> A referral includes any oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person of a provider of a settlement service or business incident to or part of a settlement service when such person will pay for such settlement service or business incident thereto or pay a charge attributable in whole or in part to such settlement service or business.

24 C.F.R. § 3500.14(f)(1). Neither Woodland Realty, Woodland Title, Chicago Title Insurance Company, nor Chicago Title of Michigan affirmatively influenced Boyink to select Woodland Title for settlement services. Thus, if Boyink has a cause of action against anybody, it is against Parsons because she referred her to Woodland Title. "Nobody ever told me I could not go any place else. Again, I went based upon what [sic] my realtor recommended that I go to." (Boyink Dep. 16.)

Accordingly, Boyink's RESPA claim must be dismissed because it fails to present any genuine issue of material fact against Defendants. Summary judgment is appropriate because the Court concludes, as a matter of law, that Boyink does not have a cause of action under 12 U.S.C. § 2607(a) against the named Defendants.

B. Michigan Consumer Protection Act

Although the Court has dismissed all of Plaintiffs' federal claims, this leaves unresolved Plaintiffs' claims based on the Michigan Consumer Protection Act, which is a state law claim. As to those claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Section 1367(c)(3) authorizes the Court to decline to exercise jurisdiction over state law claims. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial." *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991); *see also Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir. 1987).

The Court believes that the interests of justice, judicial economy, convenience, fairness, and comity would be best served by the state court's resolution of the remaining state law issues. *See Carnegie-Mellon Univ.*, 484 U.S. at 357; *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir. 2000). Accordingly, consistent with precedent, the Court declines to exercise jurisdiction over the remaining state law claims and will remand these claims to the Circuit Court for the County of Muskegon, Michigan.

## IV. CONCLUSION

For the reasons given, a partial judgment shall issue in favor of Defendants Woodland Realty, Inc., Woodland Title Agency, LLC, Chicago Title of Michigan, Inc., and Chicago Title Insurance

Company, granting summary judgment as to Plaintiffs' claims pursuant to 12 U.S.C. § 2607.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and will remand these claims to the Circuit Court for the County of Muskegon, Michigan.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>    November 13, 2007 |  /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |